Leslie W. KRUMM, Respondent,

v.

R. A. NADEAU COMPANY et
al., Relators.

No. 48561.

Supreme Court of Minnesota.

Feb. 23, 1979.

Van Eps & Gilmore and Donald W. Anderson, Minneapolis, for relators.

John C. Wallraff, Compensation Atty., Minneapolis, for respondent.

Heard before ROGOSHESKE, KELLY, and SCOTT, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

The issues raised by employer-insurer upon this writ of certiorari to review an award of workers' compensation benefits to an employee are (1) whether Minn.St.1975, § 176.645, and Minn.St.1977, § 176.645, which provide for a yearly cost-of-living adjustment in disability benefits commencing October 1, 1976, and every October 1 thereafter, apply to all employees who become entitled to disability benefits in the year following each adjustment; and (2) whether the express provision of L.1977, c. 342, § 29, which makes Minn.St.1977, § 176.-645, retroactive to October 1, 1975, is unconstitutional as a retroactive impairment of vested contractual rights or a denial of due process. The Workers' Compensation Court of Appeals answered the first question in the affirmative and declined to answer the second as beyond its jurisdiction. We affirm the court of appeals as to the first question and further hold the retroactive application of Minn.St.1977, § 176.645, constitutional.

The facts are stipulated. On June 30, 1977, Leslie W. Krumm was in the employ of R. A. Nadeau Company under a Minnesota contract of hire at a weekly wage of $400. On that date, he sustained injuries to his right leg and back which arose out of and in the course of his employment. As a result of those injuries, he has been temporarily totally disabled since June 30, 1977, and continues to be so disabled.

Both the compensation judge and the court of appeals, in interpreting and applying only the 1977 version of § 176.645, determined that Krumm was entitled to benefits computed at the rate of $145.33 per week from June 30, 1977, the date of injury, to September 30, 1977, subject to further adjustment effective October 1, 1977.

Employer-insurer argues that Minn.St. 1975, § 176.645, and Minn.St.1977, § 176.645, provide for an annual adjustment in a worker's disability benefits, beginning on October 1, 1976, and on every October 1 thereafter, but that a worker who is disabled after October 1 in any year is not entitled to any adjustment until the October 1 following the work-related disability. Krumm counters that both versions of § 176.645 require that all prior October 1 adjustments apply to any employee becoming disabled in the year following the last adjustment.

Minn.St.1975, § 176.645, provided:

"For injuries occurring after October 1, 1975 for which benefits are payable under section 176.101, subdivisions 1, 2 and 4, and section 176.111, subdivision 5, the amount being paid to the employee by the employer shall on October 1, 1976, and each October 1 thereafter be adjusted by multiplying the benefit payable prior to each adjustment by a fraction, the denominator of which is the statewide average weekly wage for December 31, 21 months prior to the adjustment and the numerator of which is the statewide average weekly wage for December 31, nine months prior to the adjustment."

Employer-insurer thus argues that since Krumm was injured June 30, 1977, he was not "being paid" any amount on October 1, 1976. Therefore, employer-insurer argues that Krumm is not entitled to an adjustment until October 1, 1977. Krumm argues that "amount being paid" refers in this case to the maximum statutory figure of $135 contained in Minn.St.1976, § 176.101, subd. 1. Under this reading, the $135 base figure increases October 1, 1976, and each October 1 thereafter, and the newly adjusted figure applies to all employees entitled to the maximum benefit level who are injured in the year following each adjustment.

Employer-insurer's interpretation, perhaps seemingly more in keeping with the literal wording of the 1975 version of § 176.645, works a capricious result. The fortuity of the time of one's injury could leave an injured party at a disability level

significantly lower than a fellow worker who was injured only one day earlier.[1]

 The 1975 version is certainly no model of clarity. However, we read "amount being paid the employee" to mean that the level paid to employees under Minn.St.1976, § 176.101, subd. 1, is to be increased yearly on each October 1 and applies to any employee disabled in the year following each adjustment. In construing a statute, this court must abide by the presumption of § 645.17 that the legislature does not intend an unreasonable result. This court must also be guided by the "fundamental principle" that in interpreting a statute, form should not be exalted over substance and literal constructions should not override the general policy and objectives of the law. See, *National Family Ins. Co. v. Muellerleile*, 308 Minn. 340, 345, 242 N.W.2d 598, 600 (1976). In the interest of treating equally all similarly situated disabled workers, we hold Minn.St.1975, § 176.-645, to provide that each adjustment applies to all employees injured in the year following the adjustment. Thus, employee Krumm, injured on June 30, 1977, is entitled to $145.33 per week from that date until October 1, 1977, with further adjustment on that date.[2]

Minn.St.1977, § 176.645, provides:

"For injuries occurring after October 1, 1975 for which benefits are payable under section 176.101, subdivisions 1, 2 and 4 and section 176.111, subdivision 5, the amount due the employee or any dependents shall be adjusted in accordance with this section. On October 1, 1976, and each October 1 thereafter the amount due shall be adjusted by multiplying the amount due prior to each adjustment by a fraction, the denominator of which is the statewide average weekly wage for December 31, 21 months prior to the adjustment and the numerator of which is the statewide average weekly wage for December 31, nine months prior to the adjustment. For injuries occurring after October 1, 1975, all adjustments provided for in this section shall be included in computing any benefit due under this section. Any limitations of amounts due for daily or weekly compensation under this chapter shall not apply to adjustments made under this section. No adjustment increase made on October 1, 1977 or thereafter under this section shall exceed six percent a year. In those instances where the adjustment under the formula of this section would exceed this maximum the increase shall be deemed to be six percent."

In light of our construction of Minn.St.1975, § 176.645, an extended discussion of the 1977 version is unnecessary. Employer-insurer argues that the 1977 version is no different than the 1975 version regarding

---

1. For instance, suppose a constant 6 percent annual adjustment under § 176.645 and suppose two employees each entitled to the maximum allowable weekly benefits under Minn.St. 1976, § 176.101, employer-insurer's construction of § 176.645 would lead to the following result:

| | A—Injured 10/1/76 | B—Injured 10/2/76 |
|---|---|---|
| Maximum weekly rate payable: | | |
| After 10/1/76 | 143.10 (135 x 1.06) | 135.00 |
| After 10/1/77 | 151.69 (143.10 x 1.06) | 143.10 (135 x 1.06) |
| After 10/1/78 | 160.79 (151.69 x 1.06) | 151.69 (143.10 x 1.06) |
| After 10/1/79 | 170.44 (160.79 x 1.06) | 160.79 (151.69 x 1.06) |

2. We express no opinion concerning the application of § 176.645 to employees entitled to the maximum allowable weekly benefits who are injured on or after October 1, 1977. Section 176.101, as of that date, ties the maximum weekly benefit level to the average weekly wage for the period ending December 31 of the preceding year. Hence, the maximum weekly benefit level under § 176.101 now has its own built-in cost-of-living adjustment, which applies to all employees entitled to the maximum level who are injured in the year following each adjustment. Section 176.645 need no longer apply its adjustment to all those injured in the

when the adjustment is to be made. If anything, the 1977 version is much clearer than the 1975 version that the adjustment is to be made yearly to apply to all injuries in the following year. The insertion in the 1977 version that "all adjustments * * * shall be included in computing any benefit due under this section" strongly suggests that the legislature intended an annual across-the-board adjustment to the base rate provided under § 176.101.

When the meaning of a statute is doubtful, courts should give great weight to a construction placed upon it by the department charged with its administration. See, *Knopp v. Gutterman*, 258 Minn. 33, 41, 102 N.W.2d 689, 695 (1960). The compensation judge and court of appeals in this case applied $145.33 per week as the maximum benefit level for temporary total disability for those injured in the year beginning October 1, 1976. We assume that this policy has been adhered to uniformly. We hold that the compensation judge and the court of appeals correctly interpreted the 1977 version of § 176.645.

The constitutionality issue raised by employer-insurer is without merit because the 1975 and 1977 versions of § 176.645 are identical in application. While the amendment of a statute raises the presumption that the legislature intended to change preexisting law, that presumption is rebutted when the language of the amendment is intended to clarify rather than enlarge the powers of the original statute. *State, by Spannaus v. Coin Wholesalers, Inc.,* 311 Minn. 346, ——, 250 N.W.2d 583, 587 (1976). A comparison of the language of the two versions demonstrates that the 1977 version was intended merely to clarify the

1975 version.[3] Employer-insurer admits in its brief that "the 1977 Legislature made no change regarding when the adjustment under Minn.St. 176.645 is to occur." Employer-insurer wants this court to construe both statutes alike; it simply takes issue with the timing of the adjustment provided for under each statute. Since the two statutes are no different in application, the retroactive application of the later one cannot unconstitutionally impair the obligation of contracts or deny due process.

Affirmed.

---

year following the adjustment to achieve parity between workers injured on October 1 and October 2 (see footnote 1, *supra* ).

3. The following discussion transpired at a meeting of the House Committee on Governmental Operations on April 22, 1977, concerning the effect of the change in the language of § 176.645:

State representative: "What did the change in language do here?" House legislative analyst dealing with labor: "When we adopted this language in 1975, the Senate amended other sections and did not amend this section [176.645] to really make the bill mesh very well. * * * When the bill came back from the Senate * * * the Senate said it would not appoint a conference committee so we could iron out these differences. * * * There was some ambiguity left in the language and some insurance companies are not paying the increase—the full $145 to people who are injured today. They are saying you have to wait until next October."